**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| BERNHARD KEPPLER, ) | CASE NO. 15-51002 (JAM) |
| ) | |
|     DEBTOR ) | |
| --- | |
| KYLE SILVESTRO, ) | ADV. PRO. NO. 15-05052 (JAM) |
| ) | |
|     PLAINTIFF, ) | |
| ) | RE: ECF NOS. 54, 59, 70 |
| VS. ) | |
| ) | |
| BERNHARD KEPPLER, ) | |
| ) | |
|     DEFENDANT. ) | |

---

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

**I.  INTRODUCTION**

In this adversary proceeding (the "Adversary Proceeding"), the Plaintiff, Kyle Silvestro (the "Plaintiff"), seeks to have a debt owed to him by the Debtor, Bernhard Keppler (the "Defendant"), deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Plaintiff moved for summary judgment on the sole count of the adversary complaint (the "Complaint"), in reliance upon documents submitted to this Court and upon the allegedly preclusive effect of a prior State Court judgment entered against the Defendant. For the reasons discussed below, the Plaintiff's Motion for Summary Judgment is **GRANTED**.

**II.  JURISDICTION**

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings pursuant to 28 U.S.C. § 1334(b), and this Court derives its authority to hear

and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

### III.   PROCEDURAL HISTORY IN THE BANKRUPTCY COURT

On July 21, 2015, the Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code. (ECF No. 1).[1] On September 21, 2015, the Plaintiff filed the Complaint (ECF Adv. No. 1), seeking a declaration that the debt he is owed by the Defendant is nondischargeable under the provisions of 11 U.S.C. § 523(a)(2)(A). On January 29, 2016, the Defendant filed an Amended Answer with Affirmative Defense (the "Answer", ECF Adv. No. 39).

On September 26, 2016, the Plaintiff filed a Motion for Summary Judgment (the "Motion for Summary Judgment", ECF Adv. No. 54), on the sole count set forth in the Complaint. On October 17, 2016, the Defendant filed a Memorandum of Law in Opposition to the Motion for Summary Judgment (the "Opposition", ECF Adv. No. 59)[2]. On November 22, 2016, the Plaintiff filed a Supplemental Memorandum of Law (the "Supplemental Memorandum," ECF Adv. No. 70). On December 15, 2016, the Motion for Summary Judgment, the Opposition, and the Supplemental Memorandum were taken under advisement.

---

[1] References to documents appearing on the docket of the instant Adversary Proceeding will appear as: ECF Adv. No. __. References to documents appearing on the docket of the main bankruptcy case will appear as: ECF No. __.

[2] The Defendant noted in his Opposition that the Plaintiff did not file a Local Rule 56(a)(1) Statement with his Motion for Summary Judgment, but instead included a "Facts" Section on pages 3 and 4 of the Motion for Summary Judgment. The Defendant treated the Plaintiff's "Facts" Section as his Local Rule 56(a)(1) Statement in the Opposition and in the Defendant's Local Rule 56(a)(2) Statement (Opp'n at 2; Local R. 56(a)(2) Statement at 1), and the Defendant filed a Local Rule 56(a)(2) Statement (ECF Adv. No. 61).

**IV.     FACTS RELEVANT TO MOTION FOR SUMMARY JUDGMENT[3]**

1.      On August 16, 2012, the Plaintiff filed a Third Amended Complaint against the Defendant and NLP International Corporation ("NLP"), in the Superior Court of the State of California, Butte County, bearing Case No. 153734 (the "California Action"), alleging: (i) breach of contract; (ii) failure to pay wages under Labor Code Section 200, et seq.; (iii) intentional misrepresentation; and (iv) negligent misrepresentation. (Compl. ¶4; Answer ¶4; Mot. for Summ. J. at 3).

2.      Pursuant to the Third Cause of Action in the California Action, the Plaintiff alleged, *inter alia*, intentional misrepresentation and fraud against the Defendant in that: (1) the Defendant made a false representation to the Plaintiff, (2) at the time the Defendant knew the representation was false, (3) the Defendant made the representation with the intention and purpose of deceiving the Plaintiff or inducing the Plaintiff to act to his detriment, (4) the Plaintiff relied on the representation to his detriment, and (5) the false representation was the proximate cause of the Plaintiff's loss. (Mot. for Summ. J. at 3; Pl.'s Ex A).

3.      The Defendant was represented in the California Action by Attorney Andrew J. Morrissey of Leland, Schultz, Morrissey & Knowles, LLP from approximately February 16, 2013 through April 2, 2014. (Opp'n at 2). Attorney Morrissey also represented NLP in the California Action.

4.      During the California Action, the Defendant, through counsel, filed a General

---

[3] In his Local Rule 56(a)(2) Statement, the Defendant admits all of the factual allegations contained in the "Facts" Section of the Motion for Summary Judgment, but denies the following allegation:

> The Defendant was represented by counsel in the State Court Action and actively defended the Plaintiff's claims from August 12, 2012 through the date of the evidentiary hearing at which the Plaintiff proffered testimonial and documentary evidence and the Defendant failed to appear despite the Court's prior denial of his continuance request.

Denial and Affirmative Defenses to the Third Amended Complaint, a Motion to Strike, Responses to Request for Admissions, Responses to General Interrogatories, and Responses to Special Interrogatories. (Aff. of Kyle Silvestro, ¶6, Ex. C).

5. Counsel for the Defendant also filed a Demurrer/Motion to Strike, and Memorandum of Points and Authorities in Support Thereof, to Plaintiff's First Amended Complaint for Damages (Breach of Contract), dated August 15, 2011, and a General Denial and Affirmative Defenses, dated November 28, 2011, on behalf of NLP. (Aff. of Kyle Silvestro, Ex. C).

6. The California Superior Court found that NLP "is the alter ego of Mr. Keppler based on Mr. Silvestro's showing that: (1) there is such a unity of interest in ownership between NLP and Mr. Keppler that the individuality or separateness of the corporation has ceased to exist or never existed in the first place; and (2) adherence to the fiction of the corporation's separate existence would sanction a fraud or promote injustice."[4] (Pl.'s Ex. B).

7. On June 5, 2014, one month before the scheduled trial in the California Action, the Defendant filed a Mandatory Settlement Conference Statement (the "Statement") advising the court that he had suffered a heart attack in 2013 and was "not able to travel." (Aff. of Bernhard Keppler, ¶6, Ex. B).

8. In the Statement provided to the court, the Defendant stated his belief that he "has shown through faithful responses to hundreds of interrogatories and submission of every document requested that the plaintiff was never an employee of NLP International and has misled the company from the beginning through statements and sales projections which were

---

[4] The California Superior Court did not enter Judgment against NLP due to NLP filing a Chapter 11 petition which resulted in an automatic stay of the California Action against NLP. (Pl.'s Ex. B).

4

instrumental to his engagement as a consultant." (Aff. of Bernhard Keppler, Ex. B).

9. By letter dated July 10, 2014, the Defendant informed the court in the California Action that NLP had filed for Chapter 11 bankruptcy and that the Defendant would not be able to attend the trial "[f]or urgent health reasons." (Aff. of Bernhard Keppler ¶¶7-8, Ex. C).

10. In a second letter dated July 10, 2014, the Defendant requested a trial continuance of 60 days because: (1) NLP International was in the process of finding new legal representation; (2) the Debtor's physicians had advised him against any travel; and (3) new information had come to the Defendant's attention in the course of preparing his defense for trial. (Aff. of Bernhard Keppler ¶¶7-8, Ex. D).

11. On July 14, 2014, a trial was held in the California Action before the Honorable Robert A. Glusman. The Defendant did not appear at the trial.[5] The matter proceeded as a "default prove up" as to the Defendant. (Def.'s Ex. E).

12. The Plaintiff introduced the Defendant's responses to interrogatories as exhibits during the trial in the California Action. All of the Plaintiff's exhibits were admitted into evidence in the California Action. (Def.'s Ex. E).

13. On September 19, 2014, an Amended Judgment was issued in the California Action in the amount of $2,403,424.62 in favor of the Plaintiff and against the Defendant (the "California Judgment"). (Compl. ¶5; Answer ¶5; Pl.'s Ex. B).

14. The California Superior Court found that the Defendant "failed to pay Mr. Silvestro commission wages totaling $487,000.00 and salary totaling $30,000.00," and that the

---

[5] The Defendant alleges that he did not have a full and fair opportunity to litigate the California Action because he was not physically present at the July 14, 2014 court trial. (Answer, Aff. Defense ¶3).

5

Defendant's "failure to pay Mr. Silvestro was willful, entitling Mr. Silvestro to thirty days of waiting time penalties totaling $31,000.00." (Pl.'s Ex. B).

15.     The California Superior Court further found that the Defendant "committed intentional fraud and acted with fraud, malice and oppression, entitling Mr. Silvestro to punitive damages three times the amount of the compensatory damage award, totaling $1,644,000.00." (Compl. ¶5; Pl.'s Ex. B).

16.     The California Superior Court also awarded the Plaintiff his costs totaling $1,334.80, attorney fees totaling $103,040.00, prejudgment interest totaling $107,049.82, and post judgment interest at a rate of ten percent per annum. (Pl.'s Ex. B).

17.     The Defendant received a copy of the California Judgment in November of 2014, when the Plaintiff served and filed domestication papers in Connecticut. (Aff. of Bernhard Keppler, ¶11).

18.     The Defendant never appealed the California Judgment. (Opp. at 10).

19.     On December 11, 2014, the California Judgment was certified as a Connecticut judgment by the Connecticut Superior Court pursuant to Connecticut General Statutes § 52-605 and assigned Docket No. FST-CV-14-4028558-S. (Compl. ¶6; Answer ¶6; Pl.'s Ex. C).

**V. DISCUSSION**

**A. Summary Judgment Standard**

"Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by Fed. R. Bankr. P. 7056, directs that '[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Parris v. Delaney (In re Delaney), 504 B.R. 738, 746 (Bankr. D. Conn. 2014)

(internal quotation marks and alteration in original) (quoting Fed. R. Civ. P. 56(a)).  When considering a motion for summary judgment, "the judge's function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  The court "cannot try issues of fact; it can only determine whether there are issues to be tried."  Flaherty v. Lang, 199 F.3d 607, 615 (2d Cir. 1999), (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994)).

At the summary judgment stage, the moving party bears the burden of showing that there are no material facts in dispute and the court is to draw all reasonable inferences, and resolve all ambiguities, in favor of the non-moving party.  United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has met its burden, in order to defeat the motion, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  In re Affinity Health Care, Mgmt., Inc., 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009)).  "[A] non-moving party must point to more than a mere 'scintilla' of evidence in order to defeat a motion for summary judgment."  Id. (quoting Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008)).

### B. Collateral Estoppel Effect of the California Judgment

"It is well settled that preclusion principles apply in bankruptcy proceedings."  Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006).  In Grogan v. Garner, the Supreme Court held that where a judgment involved proof of fraud, the debtor was estopped in a subsequent nondischargeability proceeding from relitigating whether the underlying debt was obtained by

7

fraud. 498 U.S. 279, 285-91 (1991). Similarly, the Second Circuit has held that "[w]here the debt in question is a judgment entered after a claim of fraud has been adjudicated, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision." In re DeTrano, 326 F.3d 319, 322 (2d Cir. 2003) (internal citations omitted).

Preclusion principles apply in cases where a default judgment has been entered in another court of competent jurisdiction. See, e.g., In re Swirsky, 372 B.R. 551, 562 (Bankr. D. Conn. 2006) (giving a default judgment entered against a Chapter 7 debtor in a state court action to recover for debtor's alleged breach of covenant not to compete and misappropriation of trade secrets collateral estoppel effect in a subsequent nondischargeability proceeding). In In re Swirsky, the court held that collateral estoppel applied to the issues on which the state court made specific findings—namely, that the debtor had engaged in activities prohibited by restrictive covenant and that the buyers had been damaged in amount of $250,000. Id. Similarly, in Kelleran v. Andrijevic, the United States Court of Appeals for Second Circuit held that a bankruptcy court was required to give preclusive effect to a default judgment entered in state court, holding flatly that "[b]ankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." 825 F.2d 692, 695 (2d Cir.1987) (citation omitted).

Federal courts must apply the pertinent state's collateral estoppel principles where the prior judgment involves a state court action. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). Accordingly, as California law was at issue in the California Action, this Court must apply California law in this Adversary Proceeding. Under

California law, certain threshold requirements must be met in order for collateral estoppel to apply:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom the preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

In re Cantrell, 329 F.3d 1119, 1123 (9th Cir. 2003) (citation omitted).

California courts hold that "[t]he mere fact that judgment was secured by default does not warrant the application of a special rule." Id. (quoting Williams v. Williams (In re Williams Estate), 36 Cal.2d 289 (1950)). California law has two limitations on this general principal in the context of a judgment obtained by default: (1) "[C]ollateral estoppel applies only if the defendant has been personally served with summons or has actual knowledge of the existence of the litigation;" and (2) Collateral estoppel applies "only where the record shows an express finding upon the allegation for which preclusion is sought," or where the court in the prior proceeding "necessarily decided the issue." In re Cantrell, 329 F.3d at 1124 (citations omitted; internal quotation marks omitted).

Applying these principles, the Court concludes that the California Judgment, which included an express finding of fraud by the Defendant and imposed punitive damages, bars relitigation of the fraudulent nature of the debt in the Adversary Proceeding. Evans, 469 F.3d at 282. In this case, the Plaintiff has demonstrated that no genuine issue of material fact exists regarding the issue of the Defendant's fraud. The issue was raised in the California Action, actually litigated in the California Action, necessarily decided in the California Action, the California Judgment was a final judgment on the merits, and the Defendant was the party against

whom the California Judgment was entered in the prior proceeding. Since the elements of fraud under California law are identical to the elements of fraud under 11 U.S.C. § 523(a), collateral estoppel applies to bar re-litigation of the fraudulent nature of the debt.

Based on intentional fraud allegations and following a trial at which the Plaintiff testified and offered evidence of the Defendant's fraudulent conduct, the California Superior Court: (1) explicitly concluded that the Defendant "committed intentional fraud and acted with fraud, malice and oppression;" (2) imposed punitive damages; and (3) entered judgment against the Defendant. The elements of fraud in California are: (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage. Orcilla v. Big Sur, Inc., 244 Cal. App. 4th 982 (6th Dist. 2016). The elements of actual fraud under Section 523(a) incorporate the general common law of torts and likewise include a false representation, scienter, reliance, and harm. See Restatement (Second) of Torts § 525; Field v. Mans, 516 U.S. 59, 70 n.9 (1995).

In this Adversary Proceeding, the Complaint seeks relief under Section 523(a)(2)(A), which provides that a debt "for money, property, services, or an extension, renewal, or refinancing of credit" will be deemed nondischargeable "to the extent obtained by . . . false pretenses, a false representation, or actual fraud." The fraud analysis under Section 523(a)(2)(A) requires that the creditor prove, by a preponderance of the evidence, that:

> (1) The debtor made the representations; (2) at the time he knew they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

Michalek v. Ochs (In re Ochs), 516 B.R. 213, 218 (Bankr. D. Conn. 2014).  The false representation giving rise to the debt must be knowingly and fraudulently made.  F.D.I.C. v. Roberti (In re Roberti), 201 B.R. 614 (Bankr. D. Conn. 1996).  As discussed below, these issues are entirely duplicative of the issues that were litigated and decided in the California Action.

The allegations of the Complaint are identical to what was actually litigated and necessarily determined in rendering the California Judgment in the California Action.  The California Superior Court made an express finding that the Defendant committed an intentional fraud upon the Plaintiff, which precludes relitigation of this issue by the bankruptcy court in the instant Adversary Proceeding.  The Plaintiff has demonstrated that the resolution of the issue of the Defendant's fraud was necessary to support a valid and final judgment on the merits in the California Action.  The issues on which the California Superior Court made specific findings, i.e., that the Defendant "committed intentional fraud and acted with fraud, malice and oppression," will be given collateral estoppel effect in the bankruptcy court.

The Plaintiff has also demonstrated that the Defendant is the same party as the party to the California Action and that the Defendant had a full and fair opportunity to litigate the issue of fraud in the California Action.  Here, it is not disputed that the Defendant had actual knowledge of the California Action before the California Judgment was rendered.  In fact, the Defendant actively participated in the defense of the California Action prior to the trial.  The Defendant was represented by counsel from approximately February 2013 through April 2014, filed pleadings including a General Denial and Affirmative Defenses, responded to multiple sets of discovery requests, filed the Statement prior to the trial, and sent two letters to the California Superior Court stating that he was unable to attend the trial and requesting a trial continuance.

NLP, which the California Superior Court found is the alter ego of the Defendant, was also represented by the same attorney as the Defendant as early as August 15, 2011, when the Defendant's counsel filed a Demurrer/Motion to Strike on behalf of NLP.  A review of the record in this case demonstrates that the Defendant was represented by counsel in the California Action either individually or through his alter ego, NLP, for nearly three years prior to the trial.

It is well established that "[b]ankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." Evans, 469 F.3d at 282.  The Defendant does not dispute that he was aware of and did not attend the July 14, 2014 trial in the California Action, which is evidenced by his efforts to postpone the trial.  The Defendant was not granted a continuance of the trial in the California Action and the Defendant never appealed the California Judgment that was entered following the Defendant's failure to appear at the July 14, 2014 trial.  Based on the forgoing, the Court concludes that the Defendant, the party against whom preclusion is sought, had a full and fair opportunity to litigate the issue of fraud as a party in the California Action.

Finally, the Defendant does not dispute that he received actual notice of the California Judgment in November 2014 when the Plaintiff domesticated the California Judgment in Connecticut.  The Defendant also does not dispute that he did not appeal the California Judgment.  Accordingly, because there is no genuine issue of material fact that the Defendant had knowledge of the California Action, participated in the California Action from August 15, 2011 through the date of the trial, had knowledge of the trial date, and received notice of the California Judgment in November 2014 and did not appeal the same, the record demonstrates that the Defendant had a full and fair opportunity to defend and litigate the issue of fraud in the

California Action.

## VI. **THE DEBT IS NONDISCHARGEABLE**

The California Judgment awarded compensatory damages against the Defendant based upon the Plaintiff's breach of contract and/or wage claim, which the court trebled as the punitive damages component of the award with respect to the fraud count. The compensatory component of the California Judgment was $548,000.00; the punitive damages component of the California Judgment was $1,644,000.00.

The Defendant urges this Court to find that the compensatory component of the California Judgment is dischargeable because it was awarded based on the Plaintiff's breach of contract and/or wage claim, not the claim for fraud. The Court declines to make such a determination. "[T]he bankruptcy code does not discharge [a] debtor from a 'debt' arising from improper conduct." In re Rogers, 193 B.R. 55, 59 (Bankr. M.D. Fla. 1996) (holding a punitive damages award was not dischargeable pursuant to Section 523(a)(2)(A) because it flowed from the course of conduct necessitating the award of compensatory damages to the plaintiffs).

In In re Rogers, the compensatory portion of the damage award was excepted from the defendants' discharge pursuant to Section 523(a)(2)(A) because the damages awarded arose out of the defendants' fraudulent conduct. 193 B.R. at 59. In this case, the entirety of the California Judgment was similarly predicated upon a finding that the Defendant committed intentional fraud and acted with fraud, malice and oppression. This is evidenced by the California Superior Court's calculation of the punitive damages component of the California Judgment as treble the amount of the compensatory damages award. Thus, the compensatory damages award is not dischargeable pursuant to Section 523(a)(2)(A) because it flowed from the same course of

fraudulent conduct that necessitated the award of punitive damages to the Plaintiff.  Accordingly, the Court concludes that the entirety of the California Judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## VII.  CONCLUSION

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment is hereby **GRANTED**.  The debt owed to the Plaintiff in the amount of $2,192,000.00, plus interest and costs, is **NONDISCHARGABLE** pursuant to 11 U.S.C. § 523(a)(2)(A).

Judgment shall enter in this Adversary Proceeding in favor of the Plaintiff.

DATED:  ___May 19, 2017_____

*Julie A. Manning*
Chief United States Bankruptcy Judge
District of Connecticut